IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLIAM S. VICTORY, Individually, and on behalf of all others similarly situated, | § § § § | |
| Plaintiff, | § § | Cause No. 03:07-CV-1797-O |
| v. | § § § | |
| SNEED FINANCIAL SERVICES, LLC, et al., | § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Lawyers Title Company's ("LTC") Motion for Summary Judgment (Doc. #49) with an accompanying brief (Doc. # 50) and appendix (Doc. #52) ("Def.'s App."). Plaintiff has not responded.

### I.    BACKGROUND

Plaintiff, William S. Victory, brings this suit on behalf of himself and three classes of similar investors that allege to be the victims of a "Ponzi" scheme. *See* Doc. # 21 (Sec. Amd. Compl.). From April 2001 through May 2005, Plaintiff purchased "Ad Topper" machines from Defendant Unlimited Cash, Inc. ("UCI") and service agreements from Defendant Douglas Network Enterprises ("DNE"). *Id*. Plaintiff alleges that Ad Toppers were described to Plaintiff as computer monitors that would display advertising clips when placed in ATM or vending machines. *Id.*

Plaintiff alleges that Defendant Sneed Financial Services represented itself as

1

an estate planning and investment specialist. *Id.* at 5. Plaintiff states that in communicating with Sneed Financial Services, the Ad Toppers were conveyed as being a sound investment opportunity that would generate 16% annual returns. *Id.* Plaintiff purchased Ad Topper investment contracts for $40,000.00 each. *Id.* at 3. Defendant LTC functioned as an escrow agent for Plaintiff's investment purchases. *Id.* at 6. Plaintiff alleges he agreed with Defendants UCI and DNE that each Ad Topper purchased from them was unique and represented by an individual serial number that would be provided to LTC for confirmation. *Id.* at 3.  As seen below, upon its own review, there is no evidence before the Court that LTC was aware of the representation that it would verify the validity of the serial numbers provided by UCI / DNE to Plaintiff.

Plaintiff contends that Defendants failed to disclose several facts, including that virtually all funds dispersed to investors came from new investor's funds and not from advertising sales, that many of the Ad Toppers were never placed in their promised locations, and that single machines were sold to multiple investors. *Id.* at 5-6.  Defendant LTC has produced evidence, which is undisputed in the evidence before the Court, that it did not know any of those facts nor did it have any duty to investigate Plaintiffs' business dealings and discover those facts.

Plaintiff asserts that he has lost all, or substantially all, of the money originally invested in the Ad Topper machines, and that Defendants UCE and DNE reaped millions of dollars by defrauding investors worldwide. *Id*. at 6. There is no evidence before the Court that LTC received any compensation other than that for their contracted escrow services.

Plaintiff filed suit on October 25, 2007 alleging various claims for relief. *See* Doc. # 1. Against LTC, Plaintiff brings claims for breach of fiduciary duties as an escrow agent. *See* Sec. Amd. Compl., Count I. Plaintiff alleges that LTC knew it had an obligation to release funds only after it had verified the serial number of each Ad Topper purchased by Plaintiff, and that this obligation arose from representations made in the Ad Topper Purchase agreement that stated LTC would confirm all serial numbers. *Id* at 6. Again, Defendant LTC has produced evidence that its officials were unaware of this representation to Plaintiff by the UCI / DNE Defendants, and this is undisputed on the evidence reviewed by the Court.

The Court earlier ruled on Defendant LTC's Motion to Dismiss in an Order issued March 30, 2009. *See* Doc. # 42 ("Order Den. Def.'s Mot. to Dismiss").  While finding that Plaintiff had stated a claim upon which relief could be granted, the Court noted at that time: (1) no evidence was considered by the Court on Defendant's Motion to Dismiss, and the ruling dealt purely with the face of the pleadings, Order Den. Def.'s Mot. To Dismiss, 5; (2) fiduciary duties might be found in law arising separately from the escrow instructions binding LTC to the principals (buyer and seller), *id.*; and, (3) it was "typically premature to determine the extent of a defendant's fiduciary status and duties at the motion to dismiss stage of proceedings," *id.,* citing *In re Electronic Data Systems Corp.,* 305 F. Supp. 2d 658, 665 (E.D. Tex. 2004).

The Court particularly noted at that time that Plaintiff should be afforded an opportunity to develop, and direct the Court's attention to, evidence substantiating its allegations that the separate agreement between Plaintiff and third parties under which Defendant LTC was to verify Ad Topper serial numbers had in some way obli-

3

gated LTC to do so. *See* Order Den. Def.'s Mot. to Dismiss, 3-5. The pleadings left open possibilities that this duty existed under the escrow agreement, or under another agreement to which LTC was privy, or by some other operation of law. *See id.*

Defendant's Motion for Summary Judgment and attendant brief and appendix directs the Court to probative evidence that it breached no duty under the escrow agreement, any other agreement, or by operation of law. Plaintiff has not responded in any way, nor otherwise directed the Court's attention to any evidence or argument on any issue related to LTC's Motion for Summary Judgment.

## II.  LEGAL STANDARD

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242, 248 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Id.* When ruling on a motion for summary judgment, courts must view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Ragas*, 136 F.3d at 458.

The movant bears the initial burden of pleading and identifying the particu-

4

lar element or elements that it alleges establish its entitlement to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323 (1986); *Skotak v. Tenneco Resins, Inc.* 953 F.2d 909, 913 (5th Cir. 1992). Once the movant has substantiated a requisite showing under Rule 56, the non-movant must designate specific facts in the record creating genuine issues that preclude summary judgment. *Jones v. Sheehan, Young & Culp, P.C.,* 82 F.3d 1334, 1338 (5th Cir. 1996); *Brockie v. Ameripath, Inc.,* No. 3:06-CV-0185-G, 2007 U.S. Dist. LEXIS 53385 (N.D. Tex. July 23, 2007). Conclusory allegations are not competent summary judgment evidence, and are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir.1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), cert. denied, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports her claim. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

Summary judgment may not be awarded by default when the non-movant makes no response.[1] *See Lewis v. Continental Airlines, Inc.,* 80 F. Supp. 2d 686, 694

---

[1] Plaintiff was not obligated to respond at the time the Motion for Summary Judgment was made. The applicable version of Rule 56 then read that an opposing party's obligation to respond rose only if the "motion for summary judgment [was] properly made and supported," at which point the non-movant could "not rely merely on allegations or denials in its own pleading" but was required to "set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56 (e)(2) (2009). It is for that reason that default judgment did not automatically follow from Plaintiff's *de facto* default in response. The version of Rule 56 then

(S.D. Tex. 1999*); Taylor v. Dallas County Hosp. Dist.,* 959 F. Supp. 373, 376 (N.D. Tex. 1996). A district court may nonetheless consider the facts set out by the movant to be undisputed, *Lewis,* 80 F. Supp. 2d at 694, and find the non-movant has failed to do more than simply rely on the allegations in his complaint. *Taylor,* 959 F. Supp. at 376; *see also Ragas*, 136 F.3d at 458. Then "summary judgment should, if appropriate, be entered against that party." FED. R. CIV. P. 56 (e)(2).[2] Commonly, courts will act with caution and consider the record on their own, which is over and above their duty under Rule 56.

Accordingly, the Court turns to whether: (1) the Motion is properly made and supported; (2) the non-movant fails to identify contravening evidence in the record; (3) an independent examination of the record confirms that the key evidence upon which the Motion relies is undisputed; and (4) application of the law to the record confirms that there is no material issue of disputed fact. If the answer to each inquiry is affirmative, then summary judgment is appropriate.

### III.   ANALYSIS

#### 1. Applicable Law

The first issue that must be resolved is what law to apply. In diversity cases, a federal court must apply the choice-of-law rules of the state in which it sits, where, as here, there was no choice-of-law agreement among the parties. *Hartford Under-*

---

applicable requires the Court to further examine Defendant's motion, arguments and supporting evidence to determine if summary judgment is "appropriate." *Id.* The current version of Rule 56, which entered into force on December 1, 2009, requires a response in any event "within twenty-one days after the motion is served or a responsive pleading is due, whichever is later," FED. R. CIV. P. (c)(1)(B).

[2] The version cited here and relied upon throughout is the one effective at the time Plaintiff's response was due. See footnote 1, above.

*writers Ins. Co. v. Foundation Health Servs., Inc.,* 524 F.3d 588, 593 (5th Cir. 2008); *Bonn Operating Co. v. Devon Energy Prod. Co., LP,* No. 4:06-CV-734-Y, 2009 U.S. Dist. LEXIS 15618 (N.D. Tex. Feb. 26, 2009). The "most significant relationship test" is applied in Texas to determine the state whose laws govern construction of a contract. *Access Telecomm., Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 705 (5th Cir. Tex. 1999) (citing *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979)); *Minn. Mining and Manu. Co. v. Nishika Ltd.,* 953 S.W.2d 733, 735-38 (Tex. 1997).

Under this test, district courts evaluate several types of contact "according to their relative importance with respect to the particular issue." *Robax Corp. v. Prof'l Parks, Inc.,* No. 3:07-CV-1399-D, 2008 U.S. Dist. LEXIS 60626, *28-30 (N.D. Tex. Aug. 8, 2008) (quoting *Minn. Mining*, 953 S.W.2d at 735-36. Based on the American Law Institute's RESTATEMENT (SECOND) CONFLICT OF LAWS § 188 (1971), the contacts considered in the Fifth Circuit are: (1) the place of contracting; (2) the place the contract was negotiated; (3) the place of performance; (4) the location of the contract's subject matter; and (5) the parties' domicile, residence, nationality, place of incorporation, and place of business. In this district, these are termed the "Section 188 contacts."

Defendant correctly notes and addresses the Section 188 contacts to support application of California law. *See* Def.'s Brief 3-4. Virtually every significant action, physical item or requirement for performance involved California soil rather than that of Texas, as detailed in Defendant LTC's pleadings and brief. *Id.*

However, in this district, the Section 188 contacts must be examined further in light of seven public-policy factors drawn from RESTATEMENT (SECOND) CONFLICT OF

7

LAWS § 6 (1971). *See, e.g., Bonn Operating Co.,* 2009 U.S. Dist. LEXIS 15618, at *9; *Trammell Crow Residential Co. v. Va. Surety Co.*, No. 3:08-CV-0685-B, 2009 U.S. Dist. LEXIS 96344, *5 (N.D. Tex. Oct. 16, 2009); *McCall v. Southwest Airlines Co.,* No. 3:08-cv-2000-M, 2009 U.S. Dist. LEXIS 91971, * 24-25 (N.D. Tex. Oct. 1, 2009); *Robax Corp.*, 2008 U.S. Dist. LEXIS 60626, at * 28-30 (N.D. Tex. Aug. 8, 2008). These are referenced as "Section 6 factors," *id.*, which the Court now turns to consider.

As a preliminary matter, the Court notes that the relevant law in California on escrow responsibilities is substantially similar to that in Texas. The underlying policies of Texas and California appear congruent and it therefore cannot be said that either state has a dominant interest in the application of its law. *See Cudd Pressure Control, Inc. v. Sonat Exploration Co.,* 202 S.W.3d 901, 908 (Tex. App. -- Texarkana 2006), aff'd 271 S.W.3d 228 (Tex. 2008). This has implications for application of the Section 6 factors, *see id.*, as will be shown below.

Specifically, California law limits the duty of escrow agents to execution of the orders of the parties. *Summit Financial Holdings, Ltd. V. Continental Lawyers Title,* 27 Cal. 4th 705, 711 (2002). In California, "an escrow holder has no general duty to police the affairs of its depositors; rather, an escrow holder's obligations are limited to faithful compliance with the depositors' instructions." *Id.* at 712. That matter was decisively resolved in *Summit Financial,* which has since been the leading case in California. *See, e.g., Hilton v. Wash. Mut. Bank,* No. C 09-1191 SI, 2009 U.S. Dist. LEXIS 100441, * 24-25 (N.D. Cal. Oct. 28, 2009). Escrow agencies do not act as insurers or investigators with regard to the prudence of the business relations

8

whose funds they keep in account. *See, e.g., Lee v. Title Ins. & Trust Co.,* 264 Cal. App. 2d 160 (Cal. App. 1968).

In Texas, an agreement as to the terms of the escrow by the principals, and the communication of those terms to the escrow agent, establishes valid escrow. *See Williams v. Land Title Co.,* No. 05-96-00039-CV1997, 1997 Tex. App. LEXIS 2098, * 12-13 (Tex. App. – Dallas 1997, no pet.), and cases cited therein. The "three elements" of a Texas escrow agent's responsibilities to the principals (buyer and seller) are "a duty of loyalty;" "a duty to make full disclosure; and, "a duty to exercise a high degree of care to conserve the money and pay it only to those persons entitled to receive it." *Watkins v. Williamson,* 869 S.W.2d 383, 387 (Tex. App. – Dallas 1993, no pet.) (citing *City of Fort Worth v. Pippen,* 439 S.W.2d 660, 665 (Tex. 1969)); *Holder-McDonald v. Chicago Title Ins. Co.,* 188 S.W.3d 244, 248 (Tex. App. – Dallas 2006) (citation omitted), pet. den'd 2006 Tex. LEXIS 720 (Tex. Aug. 11, 2006). As in California, an escrow agent's duties in Texas "are strictly limited and the scope of the agent's duties are defined by the escrow agreement." *Trahan v. Lone Star Title Co. of El Paso, Inc.,* 247 S.W.3d 269, 287 (Tex. App. – El Paso 2007) (citing *Equisource Realty Corp. v. Crown Life Ins. Co.,* 854 S.W. 2d 691, 697 (Tex. App. – Dallas 1993, no pet.), pet. den'd, 2007 Tex. LEXIS 970 (Tex. Oct. 19, 2007).

The similarity of the two legal regimes of escrow strongly suggests that the summary effect of consideration of the Section 6 factors should weigh against negating the California preference under Section 188 factors because the difference between Texas and California is relatively negligible. *See Cudd Pressure,* 202 S.W.3d at 908. A harmony exists between the underlying policies, and effective analyses,

within the two jurisdictions. *See id.* That suggestion is confirmed by consideration of the individual Section 6 factors, to which the Court now turns.

Section 6 factors are: (1) the needs of the interstate and international systems; (2) the relevant policies of the forum; (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability and uniformity of result; and (7) the ease in the determination and application of the law to be applied. RESTATEMENT (SECOND) CONFLICT OF LAWS § 6 (1971); *Bonn Operating Co.,* 2009 U.S. Dist. LEXIS 15618, at *9; *McCall,* 2009 U.S. Dist. LEXIS 91971, at * 24-25.

The international system is not implicated, and any impact on the interstate system is minimal, given the similar policies and practices underlying an escrow agency in the two affected states. This similarity likewise renders friction from the second, third and fifth Section 6 factors negligible. The fourth and sixth factors each sound in matters of predictability of result and certainty within the original transaction; again, the similarity of California and Texas escrow law is such that no damage, if any, can be seen by favoring either forum. Finally, the Court notes that there is no real difficulty to applying California law in this instance, as recommended by the Section 188 contacts analysis.

Accordingly, the Court finds that California law applies.

**2. The Motion is properly made and supported**

The Motion (Doc. #49) is supported by an appendix of evidence (Doc. #52) upon which Defendant LTC bases an orderly and comprehensive brief (Doc. #50).

The facts this evidence establishes are not disputed by a response from Plaintiff. The Court has considered these facts and finds that the legal arguments based upon them are supported by the cited authorities.

Defendant LTC thus establishes that no evidence suggests a fiduciary duty that was broken by LTC. Despite allegations noted above, Plaintiff has produced no evidence indicating the existence of any duty of care or fiduciary duty owed him by LTC apart from that established by the escrow agreement. It is therefore undisputed that LTC's sole duties were grounded in the escrow agreement. Plaintiff's silence, and consequent failure "to challenge [LTC's] evidence that it did not breach any duty it may have owed to [him]" leaves "no genuine dispute of material fact on this question." *Doddy v. Oxy USA,* 101 F.3d 448, 464 (5th Cir. 1996).[3]

The Court finds that the Motion has been properly made and supported. Plaintiff was therefore required to file a response. Because Plaintiff did not, the Court now considers the evidence presented by Defendant LTC to be undisputed.

**3. Independent review shows no evidence supporting Plaintiff's allegations**

Even though Plaintiff has failed to respond, the Court has independently examined the record before it. The previous order denying LTC's motion to dismiss clearly invited Plaintiff to develop a record, and direct the Court's attention to details in the record, which supported his allegations that: (1) Defendant LTC violated duties owed under the escrow agreement; and/or (2) a legal basis and factual substantiation demonstrating an independent duty of care violated by LTC. The Court

---

[3] That conclusion is stronger here than in *Doddy,* as in that instance the plaintiff *did* respond, albeit ineffectually.

has independently examined the record before it and finds no evidence supporting either position.  Accordingly, the Court now turns to application of the law to these undisputed facts.

### 4.  Summary judgment is appropriate

As stated, the evidence presented offers the escrow agreement as the only basis for any fiduciary relationship or other duty of care owed to Plaintiff by LTC. In California, an *escrow* is any transaction in which a contractual party delivers a written instrument, money, evidence of title, or other valuable item to a third party, who holds it for delivery to another contractual party after specified conditions of time, events, or performance are met. CAL. FIN. CODE § 17003 (West 2001); *Markowitz v. Fidelity Nat. Title Co.,* 142 Cal. App. 4th 508, 526 (Cal. App. 2d Dist. 2006). An escrow holder's fiduciary duty is limited under California law to complying with the instructions of the parties. *Summit Financial Holdings, Ltd.,* 27 Cal.4th at 711–714; *see also Nevis v. Wells Fargo Bank,* No. C 07-2568 MHP, 2007 U.S. Dist. LEXIS 65932, *11-13 (N.D. Cal. Sept. 6, 2007).

There is no evidence that LTC's responsibilities to Plaintiff, under any type of characterization, exceeded those within the escrow agreement. That agreement is now properly before the Court by submission as summary judgment evidence. It does not contain any duty to verify Ad Topper serial numbers, nor any other duties extraordinary to a standard escrow arrangement, such as a duty to investigate the circumstances of the principals' business dealings. Nor is there any evidence that LTC was aware of anything that it might have reported to Plaintiff that would have

prevented Plaintiff's loss in this matter. As a result, LTC has shown it is entitled to judgment as a matter of law.

While California law applies, the Court notes that even if Texas law were to apply, the result would be the same. Plaintiff presents no evidence that Defendant LTC violated a duty of loyalty, a duty to make full disclosure of any pertinent information, or a duty to exercise a high degree of care to conserve the money and pay it only to those persons entitled to receive it.

### IV.   CONCLUSION

For reasons stated above, the Court finds that summary judgment is appropriate against Plaintiff on behalf of LTC.

### V.   ORDER

The Court ORDERS that summary judgment be **GRANTED** against Plaintiff on behalf of Defendant Lawyers Title Company, and that Defendant Lawyers Title Company be **DISMISSED** from this case with all claims made against it herein **DISMISSED WITH PREJUDICE**.

So **ORDERED** this 6th day of January, 2010.

*Reed O'Connor*
**UNITED STATES DISTRICT JUDGE**